JERRY MACK HADDOCK AND JANICE ANN HADDOCK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Haddock v. Commissioner
Docket No. 29896-86.
United States Tax Court
T.C. Memo 1989-200; 1989 Tax Ct. Memo LEXIS 200; 57 T.C.M. (CCH) 274; T.C.M. (RIA) 89200; April 27, 1989. *200 Held: Petitioners' Schedule C and Schedule F losses for the year 1982 redetermined. Jerry Mack Haddock, pro se. John F. Driscoll, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency in the 1982 Federal income tax liability of petitioners in the amount of $ 1,091.95. An increase in income in the amount of $ 721.82 was previously agreed upon but is included in the statutory notice. Remaining in dispute are a Schedule C loss in the amount of $ 3,224, relating to certain real estate activities, a Schedule F farm expense in the amount of $ 1,003, and investment credit on farm machinery in the amount of $ 417. [1] For convenience our Findings of Fact and Opinion are combined, but the real estate and farm issues are separately *201 discussed. Some of the facts have been stipulated and they are so found. At the time of the filing of the petition in this case, petitioners resided in Florence, Alabama. From 1973 through 1980, Mr. Haddock was in poor health and was employed only part-time with the National Guard. However, in December 1980, Mr. Haddock commenced working full-time for the National Guard and continued that employment through 1982. Real Estate Activities
In 1978, petitioners purchased 33 acres of land which included one house. Twenty-four of the 33 acres were set aside by Mr. Haddock [2] for subdivision and during the period 1978 and 1979 the 24 acres were subdivided into 41 lots, right-of-ways were set aside for utilities, construction of an improved gravel road to provide access to the lots was commenced, and water service was brought into each lot. From fall 1979 through summer 1980, Mr. *202 Haddock listed the lots with two local real estate agents. Prices were established ranging from $ 3,000 to $ 12,000 per lot. A sales brochure was prepared by the agents with respect to the lots. With the expiration of the listing agreement in the summer of 1980, Mr. Haddock undertook to continue the marketing efforts. In order to do that, he took the brochure which the two agents had used, deleted their names, the names of their firms, and telephone numbers and addresses, and inserted his name and telephone number. Copies of the brochures were placed by Mr. Haddock in various small stores and markets in the Florence area. He also caused a large billboard-like sign to be constructed and placed on the lots containing substantially the same information, including his name and telephone number. As a result of this publicity, Mr. Haddock received a number of inquiries from individuals *203 looking for residential lots and on numerous occasions he showed prospective purchasers the lots. He received a number of verbal offers at reduced prices which he declined because he felt he could not reduce the price of any lot. From March 9, 1983, to March 9, 1984, the 24 acres were again listed with real estate agents. Through 1985 no lots had been sold due in part to the depressed economic condition of the surrounding area and to Mr. Haddock's unwillingness to reduce the lot prices. [3]
On the Schedule C attached to petitioners' 1982 tax return, petitioners claimed the following items: Car and Truck expenses
$    28
Depreciation
1,643
Legal services (arising from litigation
with road contractor)
1,265
Office supplies and postage
61
Repairs
15
Tractor fuel
62
Machine hire
150
The depreciation deduction of $ 1,643 is composed of two parts, $ 1,154 on a 1981 automobile with a recovery period *204 of 3 years and $ 489 on $ 2,221 of 5-year recovery property which includes a bush hog costing approximately $ 600, a small tractor, and a loading boom. The bush hog apparently was attached to the tractor when used. The individual costs of the tractor and loading boom are not in the record. The loading boom was only used to load either the bush hog or the tractor when maintenance on one or the other of the two pieces of equipment was required. The bush hog was used principally to mow the 24 acres while the small tractor without the bush hog was used to do trim work where the bush hog could not operate. The bush hog and tractor were used approximately every 2 weeks. These three pieces of equipment were used exclusively for the subdivided lots. The automobile on the other hand cost approximately $ 6,000. The depreciation deduction reflects one year's depreciation on one-half the cost of the automobile. While petitioner used his automobile to meet prospective purchasers at the property, including sometimes picking up prospective purchasers in Florence and taking them to see the property, the automobile was also used approximately one-half of the time for nonbusiness purposes. *205 There is nothing in the record to show by mileage driven or hours of use the annual use of the automobile or that part of the use which was related to selling the lots. The item for legal services in the amount of $ 1,265 is Mr. Haddock's cost for attorney fees incurred to defend a law suit filed by the contractor engaged to construct the roads through the 24 acres. The nature of the dispute is not entirely clear but it related to the performance of the contractor or lack thereof, and petitioner's unwillingness to pay for work that had not been completed or correctly performed. Office supplies and postage in excess of $ 61 were consumed in connection with this venture as were the items of repairs and tractor fuel. There is no evidence as to the nature of the machine hire costing $ 150. The evidence establishes that petitioner during the year 1982 was engaged in efforts to sell the 41 lots. We note that Mr. Haddock had a full-time job with the National Guard during 1982, but it is well known that many real estate agents work only part-time. There is no specific evidence as to the nature of $ 28 worth of car and truck expenses or the repairs for $ 15. The need for tractor fuel *206 is obvious. We are convinced that expenditures in excess of those sums were incurred in utilization of the bush hog and the tractor. Keeping the grass and weeds mowed on the lots in order to show the lots to potential customers is a reasonable activity by an individual engaged in selling building lots to the public. Moreover, respondent's counsel stated that respondent did not question these deductions as long as they involved no personal use, provided we found that Mr. Haddock was engaged in the real estate business in 1982. Thus we conclude that petitioner is entitled to deductions for car and truck expense, office supplies and postage, repairs, and tractor fuel, and to depreciation on the bush hog, tractor, and loading boom. On this record we cannot find as a fact that one-half of the use of petitioner's automobile was incurred in connection with his real estate sales activities. However, he was certainly entitled to a mileage deduction for local business miles or a portion of operating expenses of the automobile, which would have included more than depreciation. Using our best judgment, we conclude that petitioner is entitled to $ 150 of depreciation on his automobile for *207 business use during the year 1982. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). The legal fee poses a different problem. It was incurred in connection with improvements to a capital asset, the 41 lots. The costs associated with construction of the roads include the legal fee incurred in defending the road contractor's lawsuit. Thus the fee of $ 1,265 must be capitalized and added to petitioners' cost basis in the lots. Collins v. Commissioner,54 T.C. 1656 (1970). Farm Activities
Petitioners purchased a farm in the 1960s, using the house on that farm as their residence. The farm in 1982 included approximately 27 acres of land suitable for farming. Prior to the year in issue, Mr. Haddock [4] had raised a few cattle apparently for beef. In 1981 the land was used for row crops. In 1982 petitioner concluded that he should change to raising hay. He persuaded an uncle to till the soil and prepare the soil for the planting of grass seed. The uncle's compensation was paid by allowing him to retain hay grown in a future year. [5] Mr. Haddock also purchased a pickup truck for approximately $ 1,410 and a farm tractor with a landscaping box *208 for approximately $ 4,600. The truck was used to some extent during 1982 for hauling grass seed, fertilizer, and lime needed in connection with planting of grass seed and spreading fertilizer and lime. There is no evidence as to specific use made of the tractor. Except for the hay which petitioner gave to his uncle for preparing the soil, petitioner has sold approximately $ 300 worth of hay each year thereafter. There has been some seeding of additional land and some additional fertilizing has been required in subsequent years. Respondent argues that petitioners did not engage in the farming activities with the requisite profit objective as required by section 183. [6] Respondent in particular urges that petitioners never made a profit from the farm. However, petitioner testified that he made a profit from his cattle and from selling hay. There is no evidence to the contrary. However, if depreciation on the truck and tractor is taken into account, petitioners would have made no profit from selling hay. Moreover, both the truck and tractor were destroyed in 1984 by a fire, *209 and apparently not replaced. In later years, Mr. Haddock employed a third party, with the proper equipment, to cut and bale the hay. Thus no business use of the tractor has been shown and little use of the truck. We conclude that Mr. Haddock was engaged part-time in farming in 1982. As respondent points out, the activity was de minimis but that does not preclude it from being a business activity. There is no need to examine in detail the nine criteria contained in section 1.183-2(b), Income Tax Regs. The cost of the grass seed, fertilizer, and lime, all of which we assume is included within the $ 402 item, is a deductible expense of farming. [7] Since there is no evidence before us as to the nature of the use of the tractor during 1982, if in fact it was used, no depreciation is allowable on it. Obviously, the tractor was not necessary in the raising of hay since it and the truck were destroyed in 1984 and apparently not replaced. The cutting of hay was *210 done by a third party. Thus we have no basis upon which to allow a depreciation deduction on the tractor. The truck was used to transport the grass seed, fertilizer, and lime from the store where purchased to the farm. While the need for the truck is not readily apparent, it was used only in connection with the farming. Petitioners are entitled to deduct depreciation on the truck in the amount of $ 141 as a farm expense. Investment credit was claimed on the truck and on the tractor. Because there is no evidence that the tractor, a new vehicle, was placed in service in 1982, petitioners are entitled to no investment credit thereon. Section 46(c)(1) limits the definition of qualified investment to either new or used property, respectively, which is "placed in service by the taxpayer during such taxable year." The truck was, however, placed in service as a used vehicle and petitioners are entitled to the appropriate investment credit thereon. Decision will be entered under Rule 155.
Footnotes
1. Trial memoranda from both parties assert that the sales tax deduction, based upon respondent's tables is in dispute. However, both parties assert that the deduction should be based upon petitioners' gross income as redetermined by us. This deduction can therefore be handled under Rule 155.↩
2. Although the stipulation uses the word "petitioners" in describing both the real estate and the farming activities, Mr. Haddock in his testimony indicated that he personally performed the work. Therefore, we will refer to Mr. Haddock when describing the precise activities which were undertaken.↩
3. Petitioners' Trial Memorandum states that the house and 2 acres which were part of the original 33 acres purchased were sold during 1982, but this fact is not before the Court since petitioner did not testify to it and it is not stipulated.↩
4. See n. 2 supra.↩
5. The stipulation incorrectly states that hay was cut in 1982 by the uncle.↩
6. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
7. Respondent does not argue that the grass seed had a useful life longer than one year, hence that its cost should be capitalized and amortized.↩